UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| BRAD COLLINS LEE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 5:17-cv-00137-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| NANCY A. BERRYHILL, Acting | ) | **&** |
| Commissioner of Social Security, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

**\*\*\*\* \*\*\*\* \*\*\*\* \*\*\*\***

Brad Collins Lee seeks judicial review of an administrative decision of the Commissioner of Social Security, which denied Lee's claim for disability insurance benefits. Mr. Lee brings this action pursuant to 42 U.S.C. § 405(g), alleging the ALJ decision is erroneous and not supported by substantial evidence, the ALJ decision is contrary to law, the ALJ applied incorrect standards, and the ALJ abused his discretion in judging the medical evidence and credibility of Lee's testimony. [R. 1.] The Court, having reviewed the record and for the reasons set forth herein, will DENY Mr. Lee's Motion for Summary Judgment [R. 9] and will GRANT the Commissioner's Motion for Summary Judgment [R. 11.]

**I**

Plaintiff Brad Collins Lee filed an application for Title II disability insurance benefits (DBI) on February 18, 2014, alleging disability beginning January 29, 2014.[1] [Transcript

---

[1] This SSA case leaves a lot to be desired in terms of functional and systematic improvements. The Court notes that the Decision of the Administrative Law Judge [Tr. 25-38], the Plaintiff's Complaint [R. 1], and the Plaintiff's Motion for Summary Judgment identifies Plaintiff's application for benefits date as October 1, 2013. The ALJ's Decision also identifies the Plaintiff's alleged onset date as October 1, 2013. [Tr. 25.] However, nothing in the record

(hereinafter, "Tr.") 183.] Lee's claims were initially denied in July 2014, and then denied again upon reconsideration in September 2014. [*See* Tr. 25.] After requesting a hearing, Lee appeared and testified at a video hearing on December 22, 2015, in front of ALJ Jonathan Stanley. [*Id.*] Vocational expert Tina Stambaugh also testified. [*Id.*] The ALJ issued a final decision ultimately denying Lee's claims for benefits. [Tr. 38.]

Brad Collins Lee was born on January 3, 1973. [Tr. 183.] He graduate high school and attended one year of college. [Tr. 203.] He is married and lives with his wife in Sadieville, Kentucky. [Tr. 201.] He has not worked since January 29, 2014. [Tr. 183; Tr. 202.] His employment history consists of working at pharmacies and grocery stores for approximately eleven years. [Tr. 203.]

Mr. Lee alleges disability based on epilepsy, pericarditis, and depression. [Tr. 202.] Plaintiff began experiencing seizures related to his epilepsy at the age of thirteen; however, in 2013, his seizures intensified in frequency to approximately one per week from one per year. [Tr. 63-64, 455.] In April 2014, Lee underwent a procedure to have a Vagus Nerve Stimulator (VNS) implanted in his chest to better control the intensity and frequency of his seizures. [Tr. 437-39.] While Mr. Lee indicates that he "continues to have seizures during which he convulses, loses consciousness and loses bladder control" [R. 9-1 at 3], and the Court recognizes these events as normal for someone having seizures, Lee fails to indicate where in the record that information is objectively corroborated with regard to his epileptic episodes. In fact, in a follow-

---

supports or corroborates this information. Indeed, the Plaintiff's Application for Disability Insurance Benefits, or at least the application contained in the record, shows an application date of February 18, 2014. [Tr. 183.] The Application for Disability Insurance Benefits and the Disability Report identifies an alleged onset date of January 29, 2014. [Tr. 183, 199, 202.] Given what is at stake for the Plaintiff, the Court would hope such errors would not occur or, rather, when they do occur, the pleadings would identify such conflicts and resolve them prior to bringing the action to federal court.

2

up appointment on August 27, 2015, Mr. Lee indicated he had two seizures in the previous six months and on neither occasion experienced loss of bladder control. [Tr. 627.] The record, however, does corroborate the Commissioner's assertion that Mr. Lee's seizures reduced in number over a period of time following his VNS procedure. [R. 11 at 2-3; Tr. 455, 561, 627.] Mr. Lee reports his driver's license was removed by the Kentucky Department of Transportation due to his epilepsy. [R. 9-1 at 3.] However, again, Lee does not indicate where in the record that information is corroborated other than Mr. Lee's own testimony. [R. 9-1 at 3.] And while Mr. Lee indicates he must always have someone present with him in order to activate the VNS by magnet or administer nasal medication during a seizure [R. 9-1 at 3; Tr. 65-67], the Commissioner acknowledges as much. [*See* R. 11 at 2 n.2.]

In addition to treatment for epilepsy, Mr. Lee has a history of pericarditis – the swelling and irritation of the membrane surrounding the heart. In late 2014 Lee experienced an aortic aneurysm. [Tr. 470.] In December 2014, Lee underwent surgery for ascending aortic replacement. [Tr. 470-72.] Following his surgery, Lee presented to Dr. Hassan K. Reda with increased energy and appetite, and Lee reported eating, sleeping, and ambulating well. [Tr. 526, 528.] In April 2015, Mr. Lee reported to Chris Oser, PA-C, and Dr. Travis Hunt complaining of a "frozen shoulder." [Tr. 606.] While Mr. Lee reports this complication was a result of his heart surgery [R. 9-1 at 4], there is no objective medical evidence in the record to indicate the surgery was the cause of his ailment.

Mr. Lee also has a history of mental health issues. He has received prescription medications related to depression [*see* Tr. 306, 308, 337, 454, 459, 546, 557, 564, 591], but the Court finds nowhere in the record a diagnosis of depression. Indeed, Mr. Lee denied having depression, anxiety, or other psychiatric issues on multiple occasions. [*See* Tr. 340, 378, 547,

3

558, 578, 597.] In June 2014, Dr. M. Maude O'Neill diagnosed Lee with bipolar I disorder and adjustment disorder with depressed mood. [Tr. 451.] In July 2015, Dr. James Wilson conducted a Medical Assessment of Ability to do Work-Related Activities (Mental) of Mr. Lee. [Tr. 552-55.] Dr. Wilson determined Lee to have "poor" abilities to deal with the public, use judgment, deal with work stresses, function independently, maintain attention/concentration, understand/remember/carry out simple job instructions, relate predictably in social settings, and demonstrate reliability. [Tr. 553-55.] However, a rating of "poor" does not indicate a person has no useful ability to function in the area; instead, a rating of "poor" indicates an "ability to function . . . is seriously limited but not precluded." [Tr. 553.] Additionally, Dr. Wilson determined Lee to have a "fair" ability to function in the areas of following work rules, relating to co-workers, and interacting with supervisors. [*Id.*] A rating of "fair" indicates an "ability to function in this area is limited, but satisfactory." [*Id.*] Lastly, Dr. Wilson opined negatively on Mr. Lee's ability to work full days. [Tr. 554.]

In evaluating a claim of disability, the ALJ conducts a five-step analysis. *See* 20 C.F.R. § 404.1520. First, if a claimant is performing a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which is severe and meets certain durational requirements, she is not "disabled" as defined by the regulations. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is "disabled." 20 C.F.R. § 404.1520(d). Before moving to the fourth step, the ALJ must use all the relevant evidence in the record to determine the claimant's residual functional capacity ("RFC"), which assesses an individual's ability to perform certain physical and mental work activities on a sustained basis despite any impairment experienced by the individual. *See* 20 C.F.R. §

404.1520(e); 20 C.F.R. § 404.1545. Fourth, the ALJ must determine whether the claimant has the RFC to perform the requirements of her past relevant work, and if a claimant's impairments do not prevent her from doing past relevant work, she is not "disabled." 20. C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is "disabled." 20 C.F.R. § 404.1520(f).

Through step four of the analysis, "the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, the burden shifts to the Commissioner to identify a significant number of jobs that accommodate the claimant's profile, but the claimant retains the ultimate burden of proving her lack of residual functional capacity. *Id.*; *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

In this case, at step one, the ALJ determined that Mr. Lee has not engaged in substantial gainful activity since October 1, 2013.[2] [Tr. 27.] At step two, the ALJ found Lee to have the following "severe" impairments: obesity, low back pain, left shoulder pain with history of adhesive capsulitis, history of Dupuytren's contractures of the bilateral hands and feet, history of right talus fracture, a seizure disorder – post left-side placement of vagus nerve stimulator, hypertension, cardiomyopathy, thoracic aortic aneurysm/chronic proximal ascending aortic dissection status – post aortic replacement and repair, adjustment disorder with depressed mood, bipolar disorder, impulse control disorder and anxiety. [*Id.*] At step three, the ALJ found Lee's

---

[2] The Court notes that the detailed paragraph under the ALJ's finding indicates that Mr. Lee worked in the first quarter of 2014. [Tr. 27.] The Court also notes that Mr. Lee's alleged onset date is January 29, 2014. [Tr. 183.]

5

combination of impairments do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1. [Tr. 28.] Before moving to step four, the ALJ considered the record and determined that Lee possessed the following residual functioning capacity:

> [T]he claimant has the residual functioning capacity to perform light work as defined at 20 CFR 404.1567(b) except he can occasionally push and pull using the left upper extremity; can occasionally climb stairs and ramps, but cannot climb ropes, ladders and scaffolds; can occasionally balance, stoop, kneel, crouch and crawl; can occasionally reach overhead using the non-dominant left upper extremity; can frequently handle and finger bilaterally; can occasionally operate foot controls; cannot operate commercial vehicles; must avoid concentrated exposure to temperature extremes, humidity and vibration; cannot work at unprotected heights or around hazards such as heavy equipment; can understand, remember and carry out short, simple instructions and make simple work-related judgments; can maintain adequate attention and concentration to perform simple tasks on a sustained basis with normal supervision; can manage and tolerate simple changes in the workplace routine; and can adapt to the pressures of simple routine work.

[Tr. 19.] After explaining Lee's RFC, the ALJ found at step four that, based on this RFC, his age, education, and work experience, there are a "significant number[]" of jobs in the national economy that Lee can perform. [Tr. 37.] Accordingly, the ALJ found at step five that Mr. Lee has not been under a disability since his alleged onset date pursuant to 20 C.F.R. § 404.1520(g). [Tr. 38.]

Following the unfavorable decision, Mr. Lee timely appealed to the Appeals Council. However, the Appeals Council found no reason for review. [Tr. 1.] Lee now seeks judicial review in this Court.

## II

The Court's review is limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is

"more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decision makers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation and internal quotations omitted).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, a reviewing court may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The basis of Mr. Lee's arguments for relief is two fold: the ALJ's decision is not supported by substantial evidence and the ALJ erred in failing to adopt the restrictions articulated by Mr. Lee's treating psychologist. [R. 9-1 at 2-3, 8.] Lee argues that the record supports a finding of disability because "the evidence is compelling in this case that the combined effects of the Plaintiff's many impairments are disabling." [R. 9-1 at 3.] In support of this argument, Mr. Lee outlines his conditions of and treatment for epilepsy, cardiomyopathy and pericarditis, and depression and other mental impairments. [R. 9-1 at 2-5.] He acknowledges that any individual

7

impairment may not equal a disability enumerated in the regulations, but argues that "the combined functional effects of those impairments are clearly disabling." [R. 9-1 at 5.]

Mr. Lee also relies on the vocational expert's testimony to advance his argument. In answering a series hypotheticals, the vocational expert testified that an individual would be precluded from all work if the individual required the accompaniment of another at all times due to the employee's health. [Tr. 97.] The vocational expert also testified that an individual would be precluded from work if he were off task 20% of the workday, could not tolerate changes in the workplace, would miss work three or more days per month, and could not sit, stand or walk for a full workday. [Tr. 93.] Mr. Lee argues all of the limitations posed in these hypotheticals are supported by the objective medical evidence in his record. [R. 9-1 at 6.] The vocational expert answered several other hypotheticals during the hearing that seem to support a determination of disability. [Tr. 92-97.]

In further support of his argument, Mr. Lee cites evaluations conducted after the ALJ's decision. [R. 9-1 at 7.] In completing a psychological evaluation in May 2016, Dr. Cheryll Pearson diagnosed Mr. Lee with major depressive disorder and schizoid personality disorder. [*Id.*; Tr. 13.] Dr. Pearson also noted Lee had suicidal ideations. [Tr. 13.] In completing a Medical Assessment of Ability to do Work Related Activities (Physical) in May 2016, Dr. Richard Arnold "states that Mr. Lee "cannot lift and carry objects due to weakness and inability to grasp, cannot stand, walk or sit (prone to fall out of chair) during the workday, and precludes all postural activities." [R. 9-1 at 7; Tr.17-19.]

"In reaching a determination as to disability, the ALJ is to consider the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity to render the claimant disabled." *Walker v.*

*Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1071 (6th Cir. 1992) (citing 20 C.F.R. § 404.1523). Mr. Lee simply misrepresents these hypothetical symptoms and limitations as his own. When an ALJ poses hypothetical questions to a vocational expert, the ALJ is not bound by the vocational expert's response to those questions but "is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). Here, the ALJ did just that. The hypothetical posed by the ALJ took an individual with similar age, education, and work experience as Mr. Lee, then added more extreme conditions to ascertain certain opinions from the vocational expert. [*See* Tr. 90-97.] While some these conditions and limitations were pulled from of the evidence in Mr. Lee's record, the ALJ incorporated only those restrictions he felt were credible and strongly supported by the objective medical evidence. [Tr. 31-36, 37-38.]

With regard to the evidence submitted to the Appeals Council after the ALJ's determination, the Appeals Council was not obligated to consider those records when conducting a substantial evidence review. *See Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). In fact, "where the Appeals Council considers new evidence but declines to review the claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision." *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996) (citing *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993)). However, the district court may remand a case for further administrative proceedings due to the new evidence "if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Cline*, 96 F.3d at 148. Evidence is new only if it was "not in existence or available . . . at the time of the administrative proceeding." *Foster*, 279 F.3d at 357 (citing *Sullivan v. Finkelstein*,

9

496 U.S. 617, 618 (1990)). Newly submitted evidence is considered material "only if there is a 'reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.'" *Id.* (quoting *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988)). "A claimant shows good cause by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Id.* (citing *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984)). Here, the newly submitted evidence was not available to Mr. Lee at the time of the administrative proceeding. In fact, the evaluations were not completed until approximately three months after the ALJ's decision. The Court has no opinion as to whether the Commissioner would have reached a different disability determination because Mr. Lee fails to show good cause as to why the newly submitted evidence was not presented in the prior proceeding. Nowhere in Mr. Lee's Motion for Summary Judgment does he remark on why the newly submitted evidence – evaluations completed in May 2016 – was not completed and submitted prior to the ALJ's decision in February 2016. Therefore, the Court denies Mr. Lee's request to remand due to the newly submitted evidence.

Mr. Lee also challenges the ALJ's discretion in how much weight was given to certain evidence. Lee contends that Dr. Wilson was a treating physician whose opinions should be granted considerable weight. [R. 9-1 at 8-9.] Dr. Wilson ultimately opined that Mr. Lee does not have the ability to work full days due to drowsiness caused by medication. [R. 554.] However, the determination as to whether work exists in the national economy for a benefits applicant is a decision for the ALJ, not a physician. *See* 20 CFR §§ 404.1520 & 404.1527. While Mr. Lee argues that Dr. Wilson was a treating physician, that argument is not supported by the regulations. *See* 20 CFR § 404.1527(a)(1) & (2). In fact, the ALJ classified Dr. Wilson as

10

an independent psychological examiner as opposed to a treating source. [Tr. 36] There are two entries of record related to Dr. Wilson's assessment of Mr. Lee. [Tr. 549-50; Tr. 552-55.] The first entry appears to be progress notes or an evaluation conducted by way of reviewing Mr. Lee's medical records. [*See* Tr. 549-50.] The second entry is Dr. Wilson's assessment of Mr. Lee's mental ability to do work-related activities. [*See* Tr. 553.] Nowhere does the record indicate Dr. Wilson had an ongoing treatment relationship with Mr. Lee. Even assuming that Dr. Wilson's first entry of record was an in-person evaluation of Mr. Lee, the relationship still does not rise to the regulation's definition of a "treating source." *See* 20 CFR § 404.1527(a)(2). Regardless of Dr. Wilson's classification, the ALJ has discretion to discount the physician's opinion. *See* 20 CFR § 1527(c)(2); *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012) (unpublished). Here, the ALJ discounted Dr. Wilson's opinion, stating:

> [T]here was little information contained in [Lee's] medical report and other evidence of record that would support the marked limitations in all areas of mental function identified. Additionally, Dr. Wilson apparently did not have [the] benefit of reviewing copies of the treatment record and appeared to base his opinions solely on the claimant's subjective self-report of symptoms.

[Tr. 36.] The ALJ was correct to consider whether Dr. Wilson's opinion was consistent with the record as a whole. *See* 20 CFR § 404.1527(c)(4); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997). Mr. Lee has pointed to no evidence in the record suggesting that the ALJ did not consider his impairments both separately and in combination in making his disability determination. Indeed, the ALJ's decision thoroughly outlined Mr. Lee's severe impairments even more so than did Plaintiff's Motion for Summary Judgment. [Tr. 27.] In determining that Mr. Lee's combination of impairments fail to equal one of the regulation's listed impairments, the ALJ provided an in-depth, nearly three-page analysis of how he came to that conclusion. [Tr. 28-30.]

11

As already indicated, the ALJ ultimately found that, based on Mr. Lee's RFC, his age, education, and work experience, there are a "significant number[]" of jobs in the national economy that Lee can perform. [Tr. 37.] Accordingly, the ALJ found that Mr. Lee has not been under a disability since her alleged onset date pursuant to 20 C.F.R. § 404.1520(g). [Tr. 38.]

### III

Thus, after reviewing the record, the Court finds that the ALJ's decision finding Lee not disabled is supported by substantial evidence. Even if the evidence could also support another conclusion, the ALJ's decision must stand because the evidence reasonably supports his conclusion. *See Her*, 203 F.3d at 389-90; *Casey*, 987 F.2d at 1233.

**ACCORDINGLY**, and the Court being otherwise sufficiently advised, it is hereby ordered as follows:

1. Plaintiff Brad Collins Lee's Motion for Summary Judgment [**R. 9**] is **DENIED**;

2. The Commissioner's Motion for Summary Judgment [**R. 11**] is **GRANTED**; and

3. Judgment in favor of the Defendant shall be entered contemporaneously herewith.

This the 6th day of February, 2018.

Gregory F. Van Tatenhove
United States District Judge